# In the United States Court of Federal Claims

No. 26-744
Filed: August 17, 2026

**MICHAEL E. WOODWARD,**

***Plaintiff*,**

**v.**

**THE UNITED STATES,**

***Defendant*.**

*Michael E. Woodward*, Saint Leonard, MD, Pro Se Plaintiff.

*Julia S. March,* Trial Attorney, *Tara K. Hogan*, Assistant Director, *Patricia M. McCarthy*, Director, *Brett A. Shumate*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

A government shutdown may stop many things, but it cannot suspend the basic rule that the Court may grant relief only where the law allows. Plaintiff, Michael Woodward ("Officer Woodward"), seeks backpay under the Government Employee Fair Treatment Act ("GEFTA") for 168 hours he did not work during the October–November 2025 lapse in appropriations. (Compl., ECF No. 1); 31 U.S.C. § 1341(c); Continuing Appropriations Act, 2026, Pub. L. No. 119-37, 139 Stat. 495 (2025). The United States moves to dismiss Officer Woodward's claims under RCFC 12(b)(6), alleging that he does not state a claim for which relief can be granted. (Def.'s Mot., ECF No. 11). Although the Court reads pro se filings generously, the facts Officer Woodward himself provides foreclose relief. The law pays for work performed or leave approved, and Officer Woodward alleges neither. Accordingly, his claim cannot proceed.

Officer Woodward served as a sworn officer of the United States Capitol Police ("Capitol Police"). In his Complaint, he states that he "was designated as an excepted employee and required to work." (Compl. at 1). He explains that during the lapse in appropriations, he "was unable to report for duty for approximately 168 hours because [he] lacked funds for transportation." (*Id.*). His attachments confirm that his "last day working was October 17, 2025

and he requested unscheduled sick leave on the evening of Friday, October 17, 2025. He never returned to duty."[1] (Compl. Ex. 1 at 5, ECF 1-1).

The record shows that the Capitol Police repeatedly informed Officer Woodward that his absences were unapproved and would be treated as Absent Without Leave ("AWOL"). (Compl. Ex. 1 at 1, 5–12). One message he includes states: "your absences were not approved by an official, nor were they covered by any approved leave requests." (*Id.* at 6). Another warns that "excepted employees who utilize unapproved leave or have absences that are not supported by documentation, will be considered []AWOL[.]" (*Id.* at 9–10). Officer Woodward nevertheless seeks backpay for the hours he did not work, asserting that he is entitled to compensation for shutdown-related absences. (Compl. at 1–2).

The United States moves to dismiss Officer Woodward's claims, arguing that they fail to state a claim for which relief can be granted. (Def.'s Mot.). Officer Woodward opposes dismissal. (Pl.'s Resp., ECF No. 12). He argues that GEFTA should be interpreted to protect employees whose inability to report for duty is caused by the shutdown itself. (*Id.* at 3). He further contends that the Capitol Police management directed that his absences be treated as "self-furlough," and that the agency's subsequent coding of his time—AWOL, then leave without pay, and later restoration of some leave—was inconsistent. (*Id.* at 4). He maintains that GEFTA's protective purpose should extend to shutdown-related hardship absences and that these allegations, taken as true, state a plausible claim for relief. (*Id.* at 6). Despite these assertions, the arguments Officer Woodward advances cannot alter GEFTA's plain text, which does not authorize payment for his absences.

When considering dismissal under RCFC 12(b)(6), the Court "must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). It is well-settled that a complaint should be dismissed "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. This standard requires allegations amounting to "more than a sheer possibility that a defendant has acted unlawfully," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In evaluating a motion to dismiss for failure to state a claim, the Court "primarily consider[s] the allegations in the complaint," but is not limited to the pleading's four corners and may also look to the "matters incorporated by reference or integral to the claim[.]" *Dimare Fresh, Inc. v. United States*, 808

---

[1] Officer Woodward's Complaint contains three exhibits: (1) a voicemail transcription from his supervisor; (2) pay certification; (3) e-mail communication regarding his financial hardship. (Compl. at 2 (listing exhibits)). Rather than three separate filings, these exhibits are contained in a single docket entry. (Compl. Ex. 1–12, ECF No. 1-1). When referencing the exhibits, the Court uses page numbers as assigned by CM/ECF rather than exhibit numbers.

F.3d 1301, 1306 (Fed. Cir. 2015) (citations omitted); *see Terry v. United States*, 103 Fed. Cl. 645, 652 (2012).

The Court is mindful that a self-represented plaintiff may lack formal expertise to frame legal issues with the exacting precision of an attorney; thus, pro se filings must be liberally construed. *See Roche v. U.S. Postal Serv.*, 828 F.2d 1555, 1558 (Fed. Cir. 1987). Even so, the procedural allowances provided to pro se litigants "does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (cleaned up); *see also Nalco Co. LLC v. Bonday*, 142 F.4th 1336, 1341 (11th Cir. 2025) ("To 'liberally construe' doesn't mean to make up."). Although pro se pleadings are held to less stringent standards than those drafted by attorneys, they must still satisfy the basic pleading requirements and present a cognizable legal theory. *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

GEFTA is an amendment to the Anti-Deficiency Act designed to ensure that federal employees are paid after a lapse in appropriations ends. § 1341(c). GEFTA provides two forms of protection during a lapse. First, furloughed employees "shall be paid for the period of the lapse." § 1341(c)(2). Second, excepted employees "who are required to perform work during a covered lapse in appropriations shall be paid for such work." *Id*. The statute also allows excepted employees to use approved leave and be paid retroactively. § 1341(c)(3). In its Motion to Dismiss, the United States contends that Officer Woodward "fails to state a claim under [GEFTA] because he did not perform work as an excepted employee during a lapse in appropriations." (Def.'s Mot. at 1). The United States is correct. Nothing in GEFTA authorizes payment for unworked hours, unapproved absences, or AWOL time.

Officer Woodward's response does not alter this analysis. The first category of protected employees consists of those placed in furlough status during the shutdown. § 1341(c)(2). It is undisputed that Officer Woodward was not furloughed; his own exhibits state that "[he was] not placed in a furlough status." (Compl. Ex. at 5). Under the Anti-Deficiency Act, only the agency may designate an employee as furloughed during a lapse in appropriations; employees may not unilaterally place themselves in furlough status. *See* § 1341(a)(1)(A); § 1342. As the United States correctly notes, self-furlough was not available to Officer Woodward because it does not exist. (Def.'s Mot. at 6).

The second form of protection applies to excepted employees who performed work during the lapse; this likewise does not apply to Officer Woodward. *See* § 1341(c)(2). Officer Woodward argues that his inability to report was caused by shutdown-related financial hardship. (Pl.'s Resp. at 3; Compl. at 1). The Court accepts that allegation as true. But GEFTA does not authorize compensation for hardship-based absences. Congress did not include an exception for transportation difficulties, financial strain, or other shutdown-related impediments. The statute's text controls, and it requires actual performance of work or approved leave. Officer Woodward also points to inconsistent time-coding. (Pl.'s Resp. at 4–6). Administrative coding changes—AWOL, Leave Without Pay ("LWOP"), or later restoration of leave—do not expand GEFTA's scope. Whether time was coded one way or another, GEFTA authorizes payment only for furloughed employees or excepted employees who performed work or used approved leave. § 1341(c)(2)–(3). Coding inconsistencies cannot create statutory authority where none exists.

Officer Woodward's overall contention is that GEFTA's protective purpose should be interpreted broadly. (Pl.'s Resp. at 2–3). But statutory purpose cannot override statutory text. The text controls. GEFTA protects employees by guaranteeing retroactive pay for furloughed employees and for excepted employees who worked. § 1341(c)(2)–(3). Officer Woodward's argument is ultimately circular: he asserts that the shutdown prevented him from reporting, yet GEFTA provides relief to excepted employees only when they perform work during the shutdown. Simply stated, without being furloughed, Officer Woodward had to work for GEFTA to provide any relief; however, he explicitly states that he did not perform work during the period for which he seeks compensation. (Compl. at 1 ("I was unable to report for duty for approximately 168 hours.")). His attachments confirm that he "never returned to duty." (Compl. Ex. at 5). Because GEFTA pays excepted employees only for work actually performed and does not authorize payment for voluntary or hardship-based absences, Officer Woodward's allegations foreclose his claims.

The Court recognizes the hardship Officer Woodward describes, but the Court is bound by statute. Because Officer Woodward's own allegations establish that he did not perform work during the period in question and was not placed in furlough status, his Complaint fails to state a claim upon which relief can be granted. Accordingly, the United States' Motion to Dismiss under RCFC 12(b)(6), (ECF No. 11), is **GRANTED** and Officer Woodward's Complaint is **DISMISSED**. The Clerk **SHALL** enter judgment accordingly. The Clerk is directed to **REJECT** any future submissions in this case unless they comply with this Court's rules regarding post-dismissal submissions.[2]

**IT IS SO ORDERED.**

David A. Tapp
DAVID A. TAPP, Judge

[2] This provision does not act as an anti-filing injunction or a sanction. *Allen v. United States*, 88 F.4th 983, 989 (Fed. Cir. 2023) (holding that courts must provide pro se plaintiffs with notice and opportunity to be heard before issuing an anti-filing injunction). Plaintiff is not enjoined from proper post-dismissal filings in this case, nor is Plaintiff required to seek leave before filing future actions in this Court. *See id.* This provision is a mechanism to reject non-compliant filings in the above-captioned action once it is dismissed.